IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHRYN PEAK,

    Plaintiff,

vs.

PROFESSIONAL CREDIT SERVICE,

    Defendant.

Case No. 6:14-cv-01856-AA
OPINION AND ORDER

David M. Menditto
Hyslip & Taylor, LLC, LPA
1100 W. Cermak Rd., Ste. B410
Chicago, IL 60608

Thomas A. McAvity
Hyslip & Taylor, LLC, LPA
2225 NE Alberta, Ste. A
Portland, OR 97211
    Attorneys for plaintiff

Robert E. Sabido
Julie Annette Smith
Shane P. Swilley
Cosgrave Vergeer Kester, LLP
500 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204
    Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Kathryn Peak alleges defendant Professional Credit Service violated The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq., and the Oregon Unfair Debt Collection Practices Act ("OUDCPA"), Or. Rev. Stat. §§ 646.639 et seq., when two third parties overheard messages defendant left on her voicemail. Plaintiff moves for partial summary judgment on liability only, and asks this court to set a trial to resolve damages. Defendant moves for summary judgment on all claims. On November 16, 2015, the court heard oral argument on the motions.

For the reasons set forth below, plaintiff's motion is denied, defendant's motion is granted, and this case is dismissed.

## BACKGROUND

Plaintiff received medical treatment at Bay Area Hospital in Coos Bay, Oregon. After she failed to pay the $934.61 bill, the hospital referred the account to defendant for collection. Plaintiff and defendant negotiated a payment arrangement involving automatic debit payments of $35 per month. The first payment was debited in June 2012, and plaintiff made monthly payments until the debt was paid off in February 2015.

During the time she was making payments to defendant, plaintiff lived with her boyfriend, Barry Lyons. Mr. Lyons was unemployed at the time. In an effort to save money, Mr. Lyons canceled his cell phone service and used plaintiff's cell phone when it was available. This included checking voicemail messages left on the cell phone. Mr. Lyons believed the budget he and

Page 2 - OPINION AND ORDER

plaintiff had prepared included all of their financial obligations and income, but plaintiff had not told him about her debt to defendant or the payment plan.

On April 17, 2014, one of defendant's agents contacted plaintiff on her cell phone for the purpose of updating plaintiff's debit card information. Plaintiff explained she had the new debit card with her, but she was "kinda driving at the moment." Doc. 45 at 2. After activating the phone's speaker function, plaintiff was able to provide the updated information. During the conversation, plaintiff affirmed the phone number the agent had used was the "best number" at which to reach her. Doc. 45 at 3.

The next day, one of defendant's agents again called plaintiff. Plaintiff did not answer, and the agent heard plaintiff's outgoing message, composed of the following personalized greeting and pre-recorded message:

> Personalized Greeting
>
> Hi, you've reached Kat. I'm not available to come to the phone right now but if you'll leave your name and number I'll definitely give you a call back. Have an absolutely wonderful day.
>
> Pre-Recorded Message
>
> At the tone, please record your message. When you are finished recording you may hang up or press one for more options.

Doc. 45 at 5. After the tone, the agent left the following voicemail message:

> Hi, this is Katie and I have an important message from Professional Credit Service. This is a call from a debt collector. Please call 866-254-2993.

Id.

Page 3 - OPINION AND ORDER

Mr. Lyons testified he checked the voicemail messages later that day to see if anyone had called for him. After hearing defendant's message, he confronted plaintiff to ask if she had a debt in collection. Plaintiff testified she was "embarrassed" to admit to Mr. Lyons she had kept the debt from him and was making payments on it. Doc. 46 at 8-9. Mr. Lyons testified he was "angry" because "money was so short . . . any additional expenses were something alarming." Doc. 47 at 6. Plaintiff alleges her failure to disclose the debt to Mr. Lyons continued to be an issue over the next few weeks, but she and Mr. Lyons agree they eventually were able to put the matter behind them.

Plaintiff returned the phone call to defendant. She made clear she was not happy defendant had called her after speaking to her the previous day. See Doc. 45 at 7 (defendant's agent taking a message noting "you called in and . . . weren't happy that . . . we called again").

About a month later, on May 19, 2015, defendant's agent again called plaintiff. Plaintiff did not answer, and the agent heard the same outgoing message. The agent left a message identical to the one left on April 18.

On May 19, plaintiff decided to check her voicemail messages at work. She listened to the messages using the speaker function of her cell phone in the employee break room. Since February 2014, plaintiff was working for Western Mercantile Agency ("Western Mercantile"). Like defendant, Western Mercantile is a debt collection agency. As defendant's message played, plaintiff's

Page 4 - OPINION AND ORDER

manager, Michelle Turner, entered the room. Ms. Turner is the owner of Western Mercantile. Plaintiff testified Ms. Turner told her defendant should not be leaving messages like that, and suggested the message might violate the FDCPA.

Plaintiff again returned the phone call to defendant. During that conversation, she complained defendant was "making it very well known . . . [it]'s a debt collector on my voicemail." Doc. 45 at 10. Plaintiff also asked defendant's agent about regulations governing debt collectors: "[T]hey're not supposed to leave a voicemail stating that they are a debt collector because other people can hear your voicemails, is that correct?" Doc. 45 at 13. The agent responded, "Well, you've given us this as the best number to reach you at and so we are able to leave that message for you." Id. Plaintiff replied, "Well, just because it's the best number doesn't mean that other people don't hear it." Id.

Plaintiff alleges defendant violated the FDCPA by communicating with a third party in connection with the collection of a debt without plaintiff's consent, in violation of 15 U.S.C. § 1692c(b), and by engaging in conduct the natural consequence of which is to harass, oppress, or abuse plaintiff in connection with the collection of a debt, in violation of 15 U.S.C. § 1692d.[1] She also alleges defendant willfully and knowingly violated the OUDCPA by communicating repeatedly with plaintiff with intent to harass or

---

[1] Plaintiff voluntarily withdrew her claim pursuant to 15 U.S.C. § 1692f (prohibiting use of unfair or unconscionable means to collect a debt.)

Page 5 - OPINION AND ORDER

annoy her, in violation of Or. Rev. Stat. § 646.639(2)(e). Both parties now move for summary judgment.

STANDARDS

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine issue of material fact. Id.; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324. "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." Diaz v. Eagle Produce Ltd. Partnership, 521 F.3d 1201, 1207 (9th Cir. 2008).

DISCUSSION

I. FCDPA Claims

"Congress enacted the FDCPA to protect consumers from improper conduct and illegitimate collection practices without imposing unnecessary restrictions on ethical debt collectors." Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1169-70 (9th Cir. 2006) (citations and quotation marks omitted). The law was passed "in response to 'abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors [which] contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to

Page 6 - OPINION AND ORDER

invasions of individual privacy.'" Evon v. Law Offices of Sidney Mickell, 688 F.3d 1015, 1024 (9th Cir. 2012) (quoting 15 U.S.C. § 1692(a)). "Congress intended the Act to eliminate unfair debt-collection practices such as embarrassing communications," including communications "disclosing a consumer's personal affairs to friends, neighbors, or an employer." Id. at 1024-25 (quoting S. Rep. No. 95-382, as reprinted in 1977 U.S.C.C.A.N. 1695, 1696). Subject to a narrow exception protecting a debt collector who has made a "bona fide error," the FDCPA is a strict liability statute. Clark, 460 F.3d at 1176; see also 15 U.S.C. § 1692k(c) (setting forth requirements for bona fide error exception). Moreover, because the FDCPA is a remedial statute, it must be interpreted liberally in favor of the consumer. Clark, 460 F.3d at 1169-70.

A. Communication with Third Party

Plaintiff alleges defendant's voicemail messages were unauthorized communications with third parties, in violation of 15 U.S.C. § 1692c(b). That section provides

Communication with third parties

> Except as provided in section 1692b of this title [governing inquiries about location information], without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b). The statute defines "communication" as "the conveying of information regarding a debt directly or indirectly to

Page 7 - OPINION AND ORDER

any person through any medium." Id. § 1692a(2). Defendant contends it is entitled to summary judgment because (1) plaintiff consented to Mr. Lyons listening to the message by permitting him to check her messages, and consented to Ms. Turner listening to the message by putting her voicemail on speakerphone at work; (2) its voicemail messages were not "communications" within the meaning of the statute, as they did not convey any information about plaintiff's debt; and (3) it did not communicate "with" either Mr. Lyons or Ms. Turner, as it had no reason to know either person would listen to plaintiff's voicemail messages. I address each of defendant's arguments in turn.

### 1. Consent

As a threshold matter, defendant argues plaintiff consented to (1) Mr. Lyons listening to the April 18 message by authorizing him to check the voicemail messages and designating the phone number as the "best" number at which to reach her; and (2) Ms. Turner listening to the May 19 message by playing it on speaker in the employee break room. But the statute requires "prior consent of the consumer given <u>directly to the debt collector</u>." 15 U.S.C. § 1692c(b) (emphasis added). Neither plaintiff's decision to let Mr. Lyons check voicemail messages nor her choice to listen to the messages on speaker was communicated directly to the debt collector. See Berg v. Merchants Ass'n Collection Div., Inc., 586 F. Supp. 2d 1336, 1344 (S.D. Fla. 2008) ("A third party, or the debtor in the presence of a third party, continuing to listen to the message in spite of [a] warning [others should not listen] does

Page 8 - OPINION AND ORDER

not qualify as prior consent directly to the debt collector.") Plaintiff did communicate directly to defendant when she indicated the cell phone number was the "best" number to use. But that affirmation cannot reasonably be interpreted as consent to communicate with a third party. Plaintiff did not consent to the communications within the meaning of section 1692c(b).

### 2. "Communication"

Defendant next argues its voicemail messages did not violate section 1692c(b) because they did not constitute "communications" under the statute. There is a split of authority in the courts regarding the scope of the phrase "conveying of information regarding a debt" in 15 U.S.C. § 1692a(2). The majority position interprets that phrase broadly, holding any oral or written communication qualifies so long as the intent of the contact is to further the debt collector's efforts to collect a debt. For example, in Horkey v. J.V.D.B. & Assocs., Inc., 333 F.3d 769, 774 (7th Cir. 2003), the court held a phone message in which a debt collector told the consumer to "stop being such a [expletive] bitch" qualified as a "communication" under the FDCPA because it was left "for only one reason: to collect a debt." The court explained the defendant's employee "was not offering general advice about how [the plaintiff] could improve her disposition. He was telling her, crudely but specifically, to be more receptive to his entreaties regarding the debt." Id. Under this broad majority reading, "the FDCPA should be interpreted to cover communications that convey, directly or indirectly, any information relating to a

Page 9 - OPINION AND ORDER

debt, and not just when the debt collector discloses specific information about the particular debt being collected." Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d 643, 657 (S.D.N.Y. 2006).

A minority of courts interpret "conveying of information regarding a debt" more narrowly. These courts require the message "indicate to the recipient that [it] relates to the collection of a debt." Marx v. Gen. Rev. Corp., 668 F.3d 1174, 1177 (10th Cir. 2011). In Marx, a debt collector sent a fax to a debtor's former employer to verify employment. Id. at 1176. The fax did not disclose the sender was a debt collector or refer to a debt in any way. Id. The court held the fax was not a "communication" because the recipient could not infer any information about the debt from the contents of the fax. Id. at 1177. Applying this narrower test, some courts have held a phone message is not a "communication" even if it specifically states it is from a debt collector, because that disclosure "provide[s] no more information than would be available through caller ID[.]" Zortman v. J.C. Christensen & Assocs., Inc., 870 F. Supp. 2d 694, 707 (D. Minn. 2012).

The Ninth Circuit has not addressed this question. Although this court has not taken a position in a published opinion, it recently adopted the majority approach in an unpublished decision. See Kersten v. Quick Collect, Inc., No. 1:14-cv-00668-CL, 2015 WL 105797 at *3 (Jan. 7, 2015) (message from a collector requesting a call back without specifying the call was from a debt collector fell within the "broad definition" of "communication" under the

Page 10 - OPINION AND ORDER

FDCPA). Other district courts in this circuit have also adopted the majority position. <u>Pasquale v. Law Offices of Nelson & Kennard</u>, 940 F. Supp. 2d 1151, 1159 (N.D. Cal. 2013); <u>Lensch v. Armada Corp.</u>, 795 F. Supp. 2d 1180, 1188 (W.D. Wash. 2011); <u>Costa v. Nat'l Action Fin. Servs.</u>, 634 F. Supp. 2d 1069, 1076 (E.D. Cal. 2007); <u>Hosseinzadeh v. M.R.S. Assocs., Inc.</u>, 387 F. Supp. 2d 1104, 1116 (C.D. Cal. 2005).

It is not necessary to decide which approach is correct to resolve these motions, however, because the message here was a "communication" under either the majority or the minority test. It is undisputed the purpose of the messages was to further the collection of a debt, so the majority test is easily satisfied. But the message also conveyed information about the debt — namely, that it existed. When a message states it is from a debt collector, the natural and reasonable inference is the collector is calling regarding a debt. See <u>Poppell v. City of San Diego</u>, 149 F.3d 951, 954 (9th Cir. 1988) ("The key to a logical inference is the reasonable probability that the conclusion flows from the evidentiary datum because of past experiences in human affairs.") Defendant correctly points out debt collectors sometimes contact non-debtors — for example, to obtain location information about debtors as permitted by 15 U.S.C. § 1692b. But the fact that the debt collector might be calling for some other reason does not mean it is unreasonable to infer the call is regarding a debt owed by the intended recipient. Cf. <u>United States v. Plummer</u>, 964 F.2d 1251, 1255 (1st Cir. 1992) (facts may support competing reasonable

Page 11 - OPINION AND ORDER

inferences); but see Zortman, 870 F. Supp. 2d at 705 (message did not "convey[] information regarding a debt" because third-party listener would have to make "two key inferences" before concluding the caller was attempting to collect a debt from the owner of the phone: the call was not to a wrong number, and the call was not made for some other purpose, such as obtaining location information about a different person). Here, Mr. Lyons and Ms. Turner each listened to a message left on plaintiff's personal cell phone stating the call was from a debt collector. They both then reasonably and correctly inferred plaintiff had a debt in collection. Accordingly, the messages were "communications" within the meaning of the FDCPA.

### 3. Communication "With" Third Parties

Finally, defendant contends the voicemail messages were not communications "with" third parties because it had no reason to suspect anyone else would listen to the messages. In other cases, debt collectors have argued consumers must show intent to communicate with a third party, or at least knowledge a third party would receive the communication, to state a violation of section 1692c(b). Courts have uniformly rejected those arguments, holding the FDCPA is a strict liability statute. See Clark, 460 F.3d at 1176 (debt collector's intent goes to damages, not liability); Marisco v. NCO Fin. Sys., Inc., 946 F. Supp. 2d 287, 292 (E.D.N.Y. 2013) (plaintiff stated a claim for relief by alleging message was overheard by third party even without alleging debt collector

Page 12 - OPINION AND ORDER

intended or knew third party would hear the message); Berg, 586 F. Supp. 2d at 1343 (same).

Here, defendant is not arguing for an intent requirement. Instead, it asserts a negligence standard should apply: a communication is only "with" a third party under section 1692c(b) if the debt collector knows or should reasonably anticipate the communication will be heard or seen by a third party.[2] Plaintiff disagrees, citing the Ninth Circuit's declaration the FDCPA is a strict liability statute. I find that negligence is the correct standard here.

No matter how careful a debt collector is, there is always some risk a third party will intercept the communication. An identity thief might open mail addressed to a consumer and sent to the consumer's home, even if that mail is marked "confidential." A family member might quietly pick up the phone and listen to a seemingly private conversation. Congress intended the FDCPA to cause debt collectors to be very careful in the way they communicate with consumers, but it did not intend the statute to completely shut down all avenues of communication and force debt

---

[2] Defendant erroneously contends the Ninth Circuit already has adopted this standard. In Evon, the court stated sending a debt collection letter to a debtor's place of employment was a violation because the defendant collector "knew or could reasonably anticipate that a letter sent to a class member's employer might be opened and read by someone other than the debtor as it made its way to him/her." 688 F.3d at 1025. But the court did not hold "reasonably anticipate" was the correct test — it simply held the defendant in that case should have anticipated the letter might be opened and read by a third party, rendering the defendant's conduct a "manifest[]" violation of the FDCPA. Id.

Page 13 - OPINION AND ORDER

collectors to file a lawsuit in order to recover the amount owed. Moreover, as defendant's counsel pointed out at oral argument, a true strict liability standard would invite abuse: upon answering a phone call from a debt collector in a crowded restaurant, the recipient could expose the collector to liability for a hundred unauthorized communications with third parties simply by placing the call on speakerphone. A negligence standard strikes the right balance because it holds debt collectors liable for failure to take reasonable measures to avoid disclosure to third parties, but does not require them to avoid such disclosure at all costs.

Federal Trade Commission ("FTC") commentary on the FDCPA also supports a reasonable foreseeability standard. The commentary recommends holding debt collectors liable for sending a written message that is "easily accessible to third parties," but shielding them from liability if an "eavesdropper overhears a conversation with the consumer, unless the debt collector has reason to anticipate the conversation will be overheard." Federal Trade Commission, Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50104 (Dec. 13, 1988). Although not binding on courts, FTC interpretations of the FDCPA are entitled to "considerable weight." Hawthorne v. Mac Adjustment, 140 F.3d 1367, 1372 n.2 (11th Cir. 1998). I conclude a communication is "with" a third party under 15 U.S.C. § 1692c(b) if it was reasonably foreseeable the third party would receive the communication.

Applying that standard, I find it was not reasonably foreseeable the phone messages here would be overheard by Mr. Lyons, Ms. Turner, or any other third party. Three undisputed facts support this conclusion. First, defendant called plaintiff's personal cell phone, not a land line. Defendant knew the call was to a cell phone because plaintiff was driving when she answered the phone the day before the first message was left. The cell phone/land line distinction is important because a caller may reasonably assume messages left on a cell phone's voicemail system will not be accidentally overheard, as they must be accessed through the cell phone itself. By contrast, if any person is in the vicinity of a land line answering machine, that person may overhear a message as it is being left. See Marisco, 946 F. Supp. 2d at 295-96 ("[I]t is well known that, unlike a voicemail message, a message left on an answering machine can be easily heard within a certain distance").

Second, plaintiff's outgoing message identified her, and only her, as the owner of the phone. It is reasonably foreseeable a third party will listen to a message if the outgoing message clearly states the number is a shared line. See Branco v. Credit Collection Servs. Inc., No. CIV. S-10-1242 FCD/EFB, 2011 WL 3684503 at *1, *5 (plaintiff entitled to summary judgment on third-party communication claim when outgoing message stated "You have reached the Branco residence" and directed callers to "leave a message and phone number so that Steve, Sari or Travis may return your call").

Page 15 - OPINION AND ORDER

The same cannot be said of an outgoing message requesting callers to leave a message for only "Kat."

Finally, defendant asked plaintiff if the cell phone number was the "best" one at which to reach her the day before the first message was left. Even though plaintiff was sharing the phone and access to voicemail with Mr. Lyons, plaintiff affirmed the number was the "best" contact option without instructing defendant not to leave any messages.

Standing alone, none of these facts would be sufficient to entitle defendant to summary judgment. As explained above, the situation would be different if the outgoing message on a landline answering machine identified one person as the owner of the line. It would also be different if the outgoing message on a cell phone invited the caller to leave a message for more than one person. Taken together, though, these facts establish it was reasonable for defendant to believe it was leaving a message that would be heard only by plaintiff. The messages thus were not communications "with" third parties under section 1692c(b), and defendant is entitled to summary judgment on the first claim for relief.

### B. Harassing, Oppressive, or Abusive Conduct

Plaintiff next alleges defendant's phone messages constituted harassing, oppressive, or abusive conduct under the FDCPA. The FDCPA prohibits debt collectors from engaging in conduct the "natural consequence" of which is "to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §

Page 16 - OPINION AND ORDER

1692d.  The statute then lists examples of conduct considered abusive, oppressive, or harassing:

> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
>
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
>
> (3) [Subject to certain exceptions, t]he publication of a list of consumers who allegedly refuse to pay debts[.]
>
> (4) The advertisement for sale of any debt to coerce payment of the debt.
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
>
> (6) [Subject to certain exceptions,] the placement of telephone calls without meaningful disclosure of the caller's identity.

Id.

This list is "non-exhaustive," and a plaintiff need not allege conduct that "fall[s] neatly within any of these specified examples" to state a § 1692d violation. Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507, 1516 (9th Cir. 1994). However, "[i]t is . . . a familiar canon of statutory construction that [catchall] clauses are to be read as bringing within a statute categories similar in type to those specifically enumerated." Paroline v. United States, 134 S. Ct. 1710, 1721 (2014) (citation and quotation marks omitted). Here, plaintiff does not allege defendant engaged in any conduct similar to that enumerated above. Two brief, polite phone messages, left one month apart, do not rise to the level of "threats, . . . profane language, . . . publication or advertising

Page 17 - OPINION AND ORDER

of debt, [or] continuous or anonymous phone calls[.]" See <u>Stewart v. Hawes</u>, No. 3:14-cv-1643-AA, 2015 WL 589273 at *2 (D. Or. Feb. 10, 2015) (sending two or three letters over a two-month period is not harassing, oppressive, or abusive conduct under the FDCPA). Defendant is entitled to summary judgment on the second claim for relief.

## II. OUDCPA Claim

Finally, plaintiff asserts defendant's phone messages violated the OUDCPA, which makes it an "unlawful collection practice for a debt collector, while collecting or attempting to collect a debt[,] to . . . [c]ommunicate with the debtor or any member of the debtor's family repeatedly or continuously or at times known to be inconvenient to that person with intent to harass or annoy the debtor or any member of the debtor's family." Or. Rev. Stat. § 646.639(2)(e). Plaintiff's FDCPA oppressive/abusive conduct claim and her OUDCPA claim do not necessarily rise or fall together. The statutory standards are different in two important respects. First, the FDCPA's "harass, oppress, or abuse" standard, 15 U.S.C. § 1692d, is more demanding than the OUDCPA's "harass or annoy" standard, Or. Rev. Stat. § 646.639(2)(e). Second, the OUDCPA, unlike the FDCPA, requires proof the collector <u>intended</u> to harass or annoy the consumer.

Here, defendant's two phone messages qualify as "repeated" communications under the statute. See <u>Porter v. Wachovia Dealer Svcs., Inc.</u>, No. 07-cv-592-KI, 2007 WL 2693370 at *6 (D. Or. Sep. 12, 2007) (claim survived summary judgment when defendant made two

Page 18 - OPINION AND ORDER

phone calls to the plaintiff after plaintiff had asked defendant to communicate with his attorney instead); cf. Jennings v. Gifford, 154 P.3d 163, 165 (Or. Ct. App. 2007) (interpreting criminal stalking statute and concluding "repeated" means "more than one"). But plaintiff has pointed to no evidence in the record, and none is apparent to this court, the calls were made with the intent to harass or annoy. "The evidence suggests an intent by [defendant] to establish contact with plaintiff, rather than an intent to harass." Carman v. CBE Group, Inc., 782 F. Supp. 2d 1223, 1232 (D. Kan. 2011) (interpreting a provision of the FDCPA with a similar intent requirement). Defendant is entitled to summary judgment on the fourth claim for relief.

## CONCLUSION

Plaintiff's motion for partial summary judgment (doc. 43) is DENIED, defendant's motion for summary judgment (doc. 41) is GRANTED, and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 2ND of December [~~November~~] 2015.

_____
Ann Aiken
United States District Judge

Page 19 - OPINION AND ORDER